UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BLOOD LIVE BEMBA,                              )
                                               )
            Plaintiff,                         )
                                               )
      vs.                                      )        Case No. 4:11CV1859 JAR
                                               )
ERIC H. HOLDER, Attorney General of the        )
United States, et al.,                         )
                                               )
            Defendants.                        )

## MEMORANDUM AND ORDER

        This matter comes before the Court on Defendants' Motion to Dismiss Amended Complaint

or, In the Alternative, Motion for Summary Judgment (ECF No. 33).[1]  This matter is fully briefed

and ready for disposition.

## BACKGROUND

        Plaintiff Blood Live Bemba ("Bemba" or "Plaintiff") is a native and citizen of The Republic

of Congo (Defendants' Statement of Undisputed Facts ("DSUF"), ECF No. 36, ¶1).  Plaintiff was

granted asylum in the United States by the Chicago Asylum Office on October 30, 2003.  (DSUF,

¶2).  Plaintiff filed an I-485 Application for Adjustment of Status on April 23, 2007 with the

Nebraska Service Center of the United States Citizen and Immigration Services ("USCIS").  (DSUF,

¶3).  Asylees who have been physically present in the United States for at least one year after a grant

of asylum may apply for adjustment of status to that of a lawful permanent resident by filing Form

---

[1]Plaintiff's Motion for Summary Judgment (ECF No. 22) also is fully briefed, but the Court's determination of Defendants' Motion for Summary Judgment is dispositive.  The Court denies Plaintiff's Motion for Summary Judgment as moot, without prejudice.

I-485 Application for Adjustment of Status at the appropriate USCIS Service Center. (Declaration of David Baggerly ("Baggerly Dec."), ECF No. 35-3, ¶4); 8 U.S.C. §1159(b).[2]

In the years since Plaintiff was granted asylum in 2003, Congress passed legislation, which significantly impacts requests for adjustment of status. (Baggerly Dec., ¶5). This legislation includes the REAL ID Act (May 11, 2005), which amended the inadmissibility provisions of the Immigration and Nationality Act ("INA") §212(a)(3)(B), specifically the definitions of terrorist activities and terrorist organizations, and the Consolidated Appropriations Act CAA of 2008 ("CAA") (December 26, 2007), which amended the Secretary of Homeland Security's ("the Secretary") authority to exempt certain terrorist-related inadmissibility grounds. (DSUF, ¶5).

Plaintiff indicated on his asylum application and in his affidavit in support of his application that he was a member of the Youth Section of the Congolese Movement for Democracy and Integral Development (MCDDI) beginning in 1995. (DSUF, ¶6; Baggerly Dec., ¶6). He stated that in 1996, he was elected secretary of the Diata Branch, and as the secretary, he recorded minutes of the group's meetings. (DSUF, ¶7). He further stated that, "in December 1998, 'Ninjas,' guerillas associated with the MCDDI, launched an attack on the capital, Brazzaville." (DSUF, ¶8).

_____

[2] 8 U.S.C. §1159(b) provides that:
The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who—
(1) applies for such adjustment,
(2) has been physically present in the United States for at least one year after being granted asylum,
(3) continues to be a refugee within the meaning of section 1101 (a)(42)(A) of this title or a spouse or child of such a refugee,
(4) is not firmly resettled in any foreign country, and
(5) is admissible (except as otherwise provided under subsection (c) of this section) as an immigrant under this chapter at the time of examination for adjustment of such alien.
Upon approval of an application under this subsection, the Secretary of Homeland Security or the Attorney General shall establish a record of the alien's admission for lawful permanent residence as of the date one year before the date of the approval of the application.

Plaintiff denies that he was ever a member of the MCDDI. Instead, he claims that at sixteen, he became a member of the Youth Section of the Congolese Movement for Democracy and Integral Development (Youth JMCDDI), a social organization for young people. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss or, In the Alternative, For Summary Judgment & In Support of Plaintiff's Motion for Summary Judgment ("Response"), ECF No. 24, p. 2). Plaintiff contends that he disassociated himself from Youth JMCDDI at age eighteen by burning his membership card. (Id., pp. 2-3). Plaintiff denies ever joining the MCDDI, which is an adult group. (Id., p. 3). Likewise, he denies ever participating in any terrorist activity. (Id.).

Due to the activities of its armed wing, the Government contends that MCDDI meets the current definition of an undesignated terrorist organization, commonly referred to as a "Tier III" organization under 8 U.S.C. §1182(a)(3)(B)(vi)(III). (DSUF, ¶¶9-11). Under 8 U.S.C. §1182(a)(3)(B)(vi)(III), a Tier III terrorist organization is "a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in" defined terrorist activities. Therefore, the Government contends that Plaintiff is inadmissible to the United States under INA §212(a)(3)(B)(i)(I) for engaging in a terrorist activity as that term has been defined by Congress at INA §212(a)(3)(B)(iii)(V). (DSUF, ¶12).

Under 8 U.S.C. ¶11182(d)(3)(B)(i), the Secretary, in consultation with the Secretary of State and the Attorney General, and the Secretary of State, in consultation with the Secretary and the Attorney General, have the discretionary authority to exempt certain terrorist-related inadmissibility grounds. (DSUF, ¶13). In December 2007, the CAA amended the Secretary's and the Secretary of State's authority to exempt certain terrorist-related inadmissability grounds. (DSUF, ¶14). Specifically, the CAA expanded the discretionary authority of the Secretary and the Secretary of State to exempt certain undesignated or Tier III terrorist organizations from being considered

terrorist organizations. (Id.). None of the exercises of exemption authority issued to date would benefit Plaintiff. (Id.).

On March 26, 2008, the Deputy Director of USCIS issued a memorandum providing guidance regarding adjudication of cases involving inadmissibility under 8 U.S.C. §1182(a)(3)(B). (DSUF, ¶16). The memorandum instructed that adjudicators should withhold adjudication of cases that could benefit from the Secretary's amended discretionary authority under the CAA. (Id.).

The Government asserts that the adjudication of Plaintiff's application is being withheld in accordance with agency policy. (SOF, ¶17; Baggerly Dec., ¶13). If the USCIS were ordered to complete the adjudication of Plaintiff's adjustment of status application today, his case would be denied without prejudice to allow Plaintiff to re-file. (Id.).

Plaintiff filed this action on October 26, 2011. (ECF No. 1). On March 17, 2012, Plaintiff filed his Amended Complaint for Mandamus, Declaratory Relief and Injunction Under Administrative Procedure Act (hereinafter "Complaint" or "Compl."; ECF No. 21) against Defendant Alejandro Mayorkas, the Director of the USCIS, Defendant Janet Napolitano, the Director of the Department of Homeland Security (DHS), Defendant Robert S. Mueller, the Director of the Federal Bureau of Investigation (FBI), and Chester Moyer, the Officer in Charge of the St. Louis Office of the USCIS.[3] Plaintiff asserts that this Court has jurisdiction over this action under 28 U.S.C. §1331, the federal question statute[4]; 28 U.S.C. § 1361, the Mandamus and Venue Act of

_____

[3]The Court refers to these named defendants either as "Defendants" or, collectively, as "the Government."

[4]The federal question jurisdictional statute provides, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The federal question jurisdictional statute alone does not provide a basis for federal jurisdiction. For the Court to have federal question jurisdiction, the case must involve violations of federal constitutional or statutory law. See, e.g., Southwestern Bell Telephone Co. v. Connect Communications Corp., 225 F.3d 942, 945 (8th Cir.2000).

1962 ("Mandamus Act")[5]; and 5 U.S.C. §702, the Administrative Procedures Act ("APA"), 5 U.S.C. §702. Plaintiff alleges claims for Unlawful Withholding of Adjudication Under APA 5 U.S.C. §555(b) and §706 (Count I), Unreasonable Delay Under APA 5 U.S.C. §555(b) and §706 and the Mandamus Act 28 U.S.C. §§1361, et seq. (Count II), and Denial of Due Process of Law Under the Fifth Amendment to the Constitution of the United States--Deprivation of a Fair Hearing (Count III).

The Government moves to dismiss Plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6) and move for summary judgment pursuant to Fed.R.Civ.P. 56(c).

## STANDARDS OF REVIEW

### A.    Motion to Dismiss: Fed.R.Civ.P. 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges whether the district court possesses subject matter jurisdiction to hear the case. Johnson v. United States, 534 F.3d 958, 964 (8th Cir.2008). As the party asserting subject matter jurisdiction, plaintiff bears the burden of establishing its existence. Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir.2009); Memic v. Holder, 4:10 CV 1692 DDN, 2011 WL 1361563, at *2 (E.D. Mo. Apr. 11, 2011).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may challenge either the facial sufficiency or the factual truthfulness of the plaintiff's jurisdictional allegations. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir.1993). When passing on a facial challenge, a court must presume that all of the plaintiff's jurisdictional allegations are true. Id. The motion must be granted if the plaintiff has failed to allege a necessary element supporting subject matter jurisdiction. Id. A court confronted with a factual challenge must weigh

---

[5] The Mandamus Act provides, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

the conflicting evidence concerning jurisdiction, without presuming the truthfulness of the plaintiff's allegations. Land v. Dollar, 330 U.S. 731, 735 n. 4 (1946); Osborn v. United States, 918 F.2d 724, 730 (8th Cir.1990).

In the motion to dismiss, the Government does not challenge the truthfulness of Plaintiff's claims. Rather, the Government contends that the basis upon which Plaintiff brings his Complaint fails to provide the Court with subject matter jurisdiction. That is, the Government challenges the Court's subject matter jurisdiction, thus the Court presumes the truthfulness of Plaintiff's jurisdictional allegations. See Tan v. Chertoff, 407CV236 HEA, 2007 WL 1880742, at *2 (E.D. Mo. June 29, 2007).

**B.     Motion to Dismiss: Fed.R.Civ.P. 12(b)(6)**

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint liberally in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

**C.     Motion for Summary Judgment: Fed.R.Civ.P. 56(c)**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of its pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

## **DISCUSSION**

## I.     **Motion to Dismiss**

A.     The INA and APA

Plaintiff contends that this Court has jurisdiction to review the pace of the adjudication of his I-485 application for adjustment of status under the federal question statute, the Mandamus Act, and the APA.  (Compl., ¶18).  Plaintiff contends that his claims "arise under the INA, 8 U.S.C. §1101, *et seq.*, 8 C.F.R. §209.2, the APA, 5 U.S.C. §555(b) and 701, *et seq.*, customary and treaty-based international law, and the Constitution of the United States."  (Compl. ¶19).

The Government argues that Plaintiff's challenge to the pace of adjudication is barred by 8 U.S.C. §1252(a)(2)(B)(iii).  (Memorandum in Support of Defendants' Motion to Dismiss Amended Complaint or, in the Alternative, Motion for Summary Judgment ("Memorandum"), ECF No. 35, p. 6).  Under this provision, no court has jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified ... to be in the discretion of the Attorney General or the Secretary of Homeland Security ..."  8 U.S.C. §1252(a)(2)(B)(iii).

As noted by the Government, there is a split of authority in the Eighth Circuit regarding whether federal courts have jurisdiction over the pace of adjudication.  See Memorandum, p. 6, n.3; see also Tan, 2007 WL 1880742, at *3-4 (The Court noted that district courts have split on whether the pace that the USCIS adjudicates LPR applications is discretionary: some courts have held that the statutory framework precludes judicial review of the pace at which the USCIS adjudicates LPR applications, and other district courts have concluded that because the USCIS has a nondiscretionary duty to render a decision, courts must have jurisdiction in a mandamus suit alleging that the USCIS failed to adjudicate an application within a reasonable period of time, or else the USCIS could indefinitely delay rendering a decision.  The Tan court ultimately concluded that pace at which the USCIS adjudicates applications is a discretionary function and therefore not reviewable under 8 U.S.C. §1252(a)(2)(B)(iii)).

Thereafter, the Eighth Circuit recognized, without deciding this issue that "[b]ecause the APA provides that an agency shall proceed to conclude a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and states that a reviewing court 'shall compel agency action unlawfully withheld or unreasonably delayed,' id. § 706(1), some courts have reasoned that a district court has authority to order the officials to decide an adjustment application if the delay has been unreasonable. Villa v. U.S. Dep't of Homeland Sec., 607 F.Supp.2d 359, 363–64 (N.D.N.Y.2009); Nigmadzhanov v. Mueller, 550 F.Supp.2d 540, 543–48 (S.D.N.Y.2008); Burni v. Frazier, 545 F.Supp.2d 894, 906 (D. Minn.2008)." Debba v. Heinauer, 366 F. App'x 696, 699 (8th Cir. 2010); see also Patel v. Chertoff, 4:06CV01207 ERW, 2007 WL 1223553, at *3 (E.D. Mo. Apr. 24, 2007)("both Parties recognize that a district court may 'compel agency action unlawfully withheld or unreasonably delayed.' 5 U.S.C. § 706(1)"). The Eighth Circuit, however, declined to decide whether a case of "extreme delay by the relevant federal agency could amount to a 'failure to act,' 5 U.S.C. § 551(13), that would give the district court authority under the APA to compel agency action 'unlawfully withheld.' Id. § 706(1)." Debba, 366 F. App'x at 699.

Until this issue is decided, the Court agrees with those courts finding jurisdiction under the APA. The Court holds that it has jurisdiction over Plaintiff's claim that the USCIS has unreasonably withheld action on his I-485 application.[6] Accordingly, the Court denies Defendants' Motion to Dismiss with respect to Counts I and II, without prejudice, and addresses Plaintiff's motion for summary judgment on these claims.

B.     Due Process Claim

---

[6]The Court assumes, for purposes of this Motion, that it is not barred from reviewing the pace of the adjudication under 8 U.S.C. §1252(a)(2)(B)(ii) in Counts I and II. Therefore, the Court does not address Plaintiff's arguments that it has jurisdiction under the Mandamus Act.

In Count III, Plaintiff makes a Fifth Amendment, due process, challenge because the Government is withholding adjudication of his adjustment of status application while labeling him as a terrorist, without any support in law and facts. (Compl., ¶81). Accordingly, Plaintiff contends that the Government has violated Plaintiff's due process rights by failing to adjudicate his I-485 application. (Id.).

The Government contends that Plaintiff's due process claim is barred because he lacks a constitutionally protected interest in adjustment of status. (Memorandum, p. 8 (citing Nativi-Gomez v. Ashcroft, 344 F.3d 805, 808 (8th Cir. 2003)). The Government also asserts that it has no obligation to provide Plaintiff with an explanation as to why his application cannot be approved but, even if it had such an obligation, the USCIS has provided a detailed declaration explaining the delay. (Memorandum, p. 8 (citing Baggerly Dec., *generally*)).

In response, Plaintiff contends that the Government violated his due process rights through the indefinite hold and failure to investigate properly the facts pertaining to his application for adjustment of status. (Response, pp. 23-24). Specifically, Plaintiff asserts that the Government violated his due process rights when it erroneously classified him as a terrorist and then failed to adjust his status even though he has resided in the country for eleven years. (Id.).

The Eighth Circuit has held that "[n]o person has a constitutionally protected liberty interest in such speculative relief" as adjustment of status. Nativi-Gomez, 344 F.3d at 808. The relief sought by Plaintiff has been described as "a matter of administrative grace" and as "a power to dispense mercy." Id. As the Eighth Circuit explained:

> What matters is whether the individual has an expectation of receiving some measure of relief. Here he does not. However broadly and amorphously the concept of constitutionally protected liberty interests has been defined within procedural-due-process jurisprudence, it does not include statutorily created relief that is subject to the unfettered discretion of a governmental authority. The failure to receive discretionary adjustment-of-status relief does not constitute the deprivation of a constitutionally-protected liberty interest.

Id. at 809. Consequently, Plaintiff has failed to state a procedural due process claim under the Fifth Amendment. Id.; Patel, 2007 WL 1223553, at *5. The Court grants Defendants' Motion to Dismiss Count III of Plaintiff's Complaint.

## II.     Motion for Summary Judgment

The Government asserts that the amount of time it is spending adjudicating Plaintiff's claim is reasonable. Under the APA, a reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); Debba, 366 F. App'x at 699. Courts have adopted a six-factor test for determining when an agency delay is unreasonable under 5 U.S.C. §706(1):

(1) the time agencies take to make decisions must be governed by a "rule of reason;"

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Telecommunications Research & Action Ctr. v. F.C.C. ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984). Application of these factors to the facts here demonstrates that the Government's actions and the delay are not unreasonable.

A.      Rule of Reason

In the first TRAC factor, the Court addresses whether the time an agency takes to make decisions is governed by a rule of reason. The first factor is the "most important factor." In re Core Communications, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008). As part of the first factor, "'the court should ascertain the length of time that has elapsed since the agency came under a duty to act[.]'" In re Int'l Chem. Workers Union, 958 F.2d 1144, 1149 (D.C. Cir. 1992)(quoting Cutler v. Hayes, 818 F.2d 879, 897 (D.C.Cir.1987).

Here, Plaintiff's application has been pending since April 23, 2007--almost 6 years. The Government claims that the time the USCIS is taking to review Plaintiff's application is governed by the rule of reason. The adjudication of Plaintiff's application for adjustment of status is currently on hold based upon the enactment of the CAA of 2008 and the resulting USCIS policy, requiring a nationwide hold on the applications of individuals involved in Tier III organizations. See Baggerly Dec., ¶12; 8 U.S.C. ¶1182(d)(3)(B)(i).

Plaintiff claims that the Government's explanation does not satisfy the rule of reason because it does not explain why the delay is reasonable or in what activity Plaintiff has engaged. (Response, p. 24). Plaintiff also notes that, although he may seek travel and employment while his case is pending, Baggley's declaration ignores that Plaintiff must pay the filing fees for such applications annually and many countries will not issue a visa to enter the country on an asylee reentry permit alone. (Id.). Plaintiff notes that the USCIS's fee for processing an application for a travel document is $360, and an application for employment authorization is $380, and the annual renewal of a driver's license is $25 in the State of Missouri. (Id.).

A few months before Plaintiff filed adjustment of status in 2007, the USCIS issued its hold memorandum. See Baggerly Dec., ¶13. Thus, the current hold placed on adjudication of Plaintiff's application results directly from the CAA and the USCIS's CAA-based policy and thus satisfies the rule of reason under the first TRAC factor. See Baggerly Dec., ¶13. The exemption process

requires the consultation between the Secretary of State, the U.S. Attorney General, and the Secretary. See 8 U.S.C. §1182(d)(3)(B)(i). The exemption process also requires research by law enforcement and intelligence agencies and various levels of vetting that precede the required coordination among the three Cabinet officials. Thus, these Congressionally-designed exemptions are a careful and time-consuming process. See Baggerly Dec., ¶11. The Court acknowledges that six years presents a significant delay, but the Court does not believe that the delay is unreasonable given the process and the coordination of high-ranking officials required. Moreover, the Court recognizes that several exemptions have been approved during this process but that they have not made a decision on exemption that would benefit Plaintiff. The fact that the Government has not yet made a decision regarding an exemption that would favor Plaintiff does not make it unreasonable. Based upon the arguments adduced by the Government, the Court finds that the length of time and the adjudicatory hold are governed by the rule of reason.

B.    Congressionally Mandated Timetable

The Government states that there is no congressionally mandated timetable or other indication of the speed with which the agency should proceed. (Memorandum, p. 12)(citing 8 U.S.C. §1159(b)); 8 C.F.R. §§209, 245, et seq.; Patel, 2007 WL 1223553, at *3 ("There is no statutory or regulatory limit on the time that USCIS may take in evaluating an alien's I-485 application to adjust status to permanent resident."); Elkins v. Moreno, 435 U.S. 647, 667 (1978)("adjustment of status is a matter of grace, not right"). The Government asserts that 8 U.S.C. §1571(b) does not require the USCIS to adjudicate his application for adjustment of status within 180 days. Rather, 8 U.S.C. §1571(b) provides merely a "sense of Congress" regarding the proposed processing times.[7] Courts have held that this "sense of Congress" is "non-binding." Memic, 2011

_____

[7]8 U.S.C. §1571 provides, "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the

WL 1361563, at *7 (citing <u>Ryan v. Dedvukaj</u>, No. 09–14178, 2009 WL 3809813, at *1–2 (E.D.Mich. Nov. 13, 2009) ("Section 1571(b) is merely a policy statement, worded in precatory terms; it does not create an obligation for Defendants to meet the 180–day deadline, nor does it give Plaintiffs a right of enforcement.")); <u>Carter v. Dept. of Homeland Security</u>, No. 07–12953, 2008 WL 205248, at *2, n.1 (E.D.Mich. Jan. 24, 2008)).  If Congress had intended to make this standard mandatory, then it could have done so as it has in other instances.  <u>Id.</u>  Accordingly, the Government argues that this factor weighs in its favor as there is no congressionally mandated time limit.

Plaintiff argues that Congress has indicated that the processing of immigration applications should take no longer than 180 days.  8 U.S.C. §1571.  And, the Court should consider the agency's own time frame and policies for adjudicating this type of application. Plaintiff notes that it takes the USCIS four months to adjudicate asylum-based adjustment applications.   (Response, p. 30). Plaintiff contends that the delay here is unreasonable.

The Court finds that because there is no congressionally mandated time limit and because the process at issue is high-level and time consuming that the second TRAC factor weighs in favor of the Government.  This case is not the typical adjustment of status asylee case.  Rather, it involves a high-level waiver of Plaintiff's terrorism-related inadmissibility grounds.  While the delay in this case is unfortunate, the Court does not believes that this factor supports Plaintiff.

C.     Impact of the Delay and the Nature of the Interests Prejudiced

Courts often consider the third and fifth TRAC factors together.  The third factor considers the potential effect of the delay on human health and welfare.  The fifth factor addresses the nature and extent of the interests prejudiced by the delay.

---

application, except that a petition for a nonimmigrant visa under section 1184 (c) of this title should be processed not later than 30 days after the filing of the petition."

The Government contends that Plaintiff's inconvenience because of the adjudication delay does not outweigh its interest in complying with the Congressional mandates of the CAA and the resulting USCIS policy. The Government asserts that it must consider Plaintiff's adjustment of status application in light of the CAA provisions to determine whether his denial is one that would benefit from future exemptions issued by the Secretary. See Baggerly Dec., ¶13. Further, the Government contends that Plaintiff's interests are not at issue because, if his application were adjudicated based upon the present facts and exemptions currently approved, then Plaintiff's application for adjustment of status would be denied. In the interim, Plaintiff is eligible for work authorization and travel documents. Accordingly, Plaintiff actually benefits from a delay in his adjudication. (Memorandum, p. 13). In addition, because Plaintiff's application involves his admitted membership in a terrorist group, human health and welfare interests are implicated and must be adequately and thoughtfully considered. (Memorandum, p. 14).

Plaintiff argues that the third and fifth TRAC factors are implicated because the delay in adjudication of his adjustment of status application prevents him from traveling internationally without special travel authorization, and also jeopardizes his ability to re-enter the United States. (Response, p. 31). Plaintiff notes that many countries refuse to issue him a visa without his green card and he has to renew his employment authorization on a yearly basis. (Id.). Plaintiff contends that the delay "significantly impacts Plaintiff's ability to seek American citizenship and all the rights and privileges inured thereto." (Id.).

Plaintiff also asserts that the Government's claim that the delay in processing Plaintiff's application due to national security interests is illogical. (Id.). Plaintiff points out that the Government's claim that Plaintiff provided material support for a Tier III terrorist organization is supported only by Plaintiff's application for asylum, which was approved. (Id., pp. 31-32).

Moreover, Plaintiff has lived and worked in the United States for the last eleven years without any concern on the part of the Government.  (Id., p. 32).

The Court finds that the third and fifth TRAC factors weigh in favor of the Government.  The Court finds that any prejudice to Plaintiff is outweighed by the benefit to him, as his application would be denied if it were adjudicated under the present USCIS policy. See Khan v. Scharfen, 08-1398 SC, 2009 WL 941574, at *9 (N.D. Cal. Apr. 6, 2009)(noting that "the delay in adjudication appears to favor Plaintiff" because the Government previously determined that he was inadmissible). The Court also notes that there is no guaranteed right to naturalization.  See United States v. Ginsberg, 243 U.S. 472, 475 (1917).   In addition, Plaintiff's claim that the Government's position is illogical is without merit.  The Government lacks discretion to choose whether to apply terrorism-related inadmissibility grounds when considering an application for adjustment of status. See U. S. Immigration & Naturalization Serv. v. Hibi, 414 U.S. 5, 8 (1973)("It is well settled that the Government is not in a position identical to that of a private litigant with respect to its enforcement of laws enacted by Congress.").   Thus, Plaintiff cannot imply that the Government should be estopped from applying the Congressionally-mandated inadmissibility grounds.  Based upon the foregoing, the Court finds that the third and fifth TRAC factors weigh in favor of the Government.

D.     Effect of Expediting Delayed Action on Agency

The fourth TRAC factor requires consideration of the effect of expediting delayed action on agency activities of a higher or competing priority.  The Government contends that expediting action on Plaintiff's application would challenge the agency's process for exercising its discretionary exemption authority.  (Memorandum, p. 15).   The Government asserts that, at the very least, ordering expedited adjudication would require truncated consideration of a potential exemption that might benefit Plaintiff pursuant to 8 U.S.C. §1182(d)(3)(B)(i).  Thus, the Government contends that any rush on adjudication necessarily impedes on the USCIS's discretion regarding whether to grant

an exemption from Plaintiff's inadmissibility and, thus, the fourth TRAC factor weighs in the Government's favor. (Id.).

Plaintiff contends that ordering the adjudication of his application will not prejudice any activities of a higher priority. He argues that he simply wants to be put "back in his proper place in line." (Response, p. 33). Indeed, Plaintiff maintains that the Government has not provided any evidence "that there, in fact, is any sort of line or queue or any evidence as to where Plaintiff exists in that line." (Id.).

As previously discussed, it does not appear that Plaintiff's application is delayed indefinitely or otherwise at the back of the line. Rather, it seems that the USCIS merely is waiting for a waiver of Plaintiff's terrorism-related inadmissibility grounds.[8] Thus, the Court finds that this factor is not implicated.

E.       Impropriety Behind the Delay

Finally, the Court looks to whether there is any agency impropriety behind the delay. First, the Government contends that it has placed Plaintiff's application on hold in order to determine whether he is eligible for any of the Secretary's exemptions or any future exemptions from the terrorism-related inadmissibility grounds. (Memorandum, p. 15). The Government notes that several exemptions have been issued to date. (Memorandum, p. 16, n.6 (identifying several categories of aliens who have benefitted from exemptions)). Thus, the Government contends that the delay is in good faith.

In addition, the Government asserts that the length of the delay is not unreasonable. (Memorandum, p. 16). The Government differentiates this case from other cases, such as the typical

---

[8]In fact, the Government submitted a "Notice of Administrative Action," which provides USCIS's Request for Evidence from Plaintiff. (ECF No. 42). The Government contends that this Request for Evidence indicates that the USCIS is in the process of adjudicating Plaintiff's pending application for adjustment of status. (Id.).

"name check" case. (Id.); cf. Al Karim v. Holder, No. CIVA08CV00671-REB, 2010 WL 1254840 (D. Colo. Mar. 29, 2010)(FBI took six years to complete Plaintiff's name check). Here, the Government has completed all of the preliminary background checks but is withholding final adjudication until it can be determined whether Plaintiff will qualify for a legislatively enacted, high-level exemption. (Id., pp. 16-17). The Government also cites to two recent cases that have held that delays of several years are not unreasonable as a matter of law. See Reply in Support of Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("Reply"), ECF No. 41, pp. 2-3 (citing Debba, 366 F. App'x at 699 (10-year delay by USCIS in a case involving adjudicatory hold was not unreasonable); Ayyoubi v. Holder, 4:10-CV-1881 SNLJ, 2011 WL 2983462, at *10 (E.D. Mo. July 22, 2011) (5–year delay of adjudicating I-485 application was not unreasonable).[9] Accordingly, the Government insists the delay is not unreasonable.

Plaintiff argues that the USCIS has not done enough to ensure that his application is adjudicated within a reasonable time. (Response, p. 33). Plaintiff contends that the Government merely forwarded his case to the DHS and USCIS headquarters without any indication when they should or would make a decision on the case. (Id.). In addition, the delay is indefinite, even though the adjudication for this type of claim is typically four months. (Id., pp. 33-34).

Plaintiff also criticizes the Government's assertion that the delay actually benefits him. (Response, p. 34). Plaintiff asserts that it is not enough to assert that there is a "nebulous prospect for a future change in law or policy," particularly when there is no indication when adjudication will occur. (Id.). Plaintiff maintains that any "benefit" to him is outweighed by the "frustration and anxiety Plaintiff has and continues to experience in the face fo Defendants' long-standing delay."

---

[9]Although the Government has since argued that the delay in this case was only 3 years and 3 months because it was closed and later reopened and put on an adjudicative hold. See Brief for Defendants-Appellees at 19 Ayyoubi v. Holder, No. 12-1297(8th Circuit June 11, 2012).

(Id.).  Moreover, Plaintiff notes that if his application were denied, then he could seek redress in federal court under the APA for an arbitrary and capricious denial.  (Id., pp. 34-35).

As discussed, the delay here is the result of the CAA and the USCIS CAA-based policy.  The Court finds no impropriety on the part of the Government here.  Plaintiff's application requires consideration of factors outside the scope of the usual asylum adjustment of status application.  Nor does the Court find that Plaintiff's application is indefinitely delayed.   To the contrary, the Government has provided evidence that Plaintiff's application is on hold to await further guidance from the Secretary of Homeland Security, who is considering Plaintiff's application for a possible exemption from terrorism-related inadmissibility. The Government filed a "Notice of Administrative Action," which provides USCIS's Request for Evidence, dated February 12, 2013, from Plaintiff. (ECF No. 42).  The Request for Evidence indicates that the USCIS is in the process of adjudicating Plaintiff's pending application for adjustment of status.  (Id.). The placing of Plaintiff's application on hold appears to be an act of good faith.  Khan, 08-1398 SC, 2009 WL 941574, at *9.  Because it appears that Plaintiff's application is actively pending in the USCIS, rather than on indefinite delay, the Court finds that this factor weighs in favor of the Government.

The TRAC factors demonstrate that the Government's actions and the delay are not unreasonable, and the Court grants Defendants' Motion for Summary Judgment with respect to Counts I and II.

## CONCLUSION

The Court understands Plaintiff's frustration with this long and protracted process.  As recognized by other courts, the Court realizes that at some point a long-term hold on the adjudication becomes an effective denial of adjustment of status.  See, e.g., Al Karim v. Holder, No. CIVA08CV00671-REB, 2010 WL 1254840 (D. Colo. Mar. 29, 2010)(holding the 8-year delay in adjudicating a refugee's I–485 application was unreasonable as matter of law); Al-Rifahe v.

Mayorkas, 776 F. Supp. 2d 927, 938 (D. Minn. 2011)(denying the government's motion for summary judgment where the plaintiff's application was pending for over thirteen years and the government's argument regarding the lengthy process of assessing Tier III organizations was "severely undermined in Al–Rifahe's case by the January 2010 memorandum determining that applications on hold because of the applicant's association with the INC may be considered for an exemption").  While the Court does not identify the "tipping point" of when the length of such a delay becomes a denial, the Eighth Circuit has upheld a ten-year delay in adjudication (although based largely upon an application backlog) as not unreasonable.  See Debba v. Heinauer, No 8:08CV304, 2009 WL 146039 (D.Neb. Jan. 20, 2009), aff'd 366 Fed. Appx. 696, 2010 WL 521002 (8th Cir. Feb. 16, 2010).[10]  Furthermore, the Government presented evidence that it has made progress regarding exemptions to other categories of applicants and that it is moving forward with Plaintiff's application.  See ECF No. 42.  "[I]n view of all the other circumstances in the case, especially national security concerns and the high-level, detailed, and discretionary reviews necessitated by exemption determinations under 8 U.S.C. § 1182(d)(3)(B)(i)," the Court finds that the 6-year delay experienced by Plaintiff is reasonable as a matter of law.  See Ayyoubi v. Holder, 4:10-CV-1881 SNLJ, 2011 WL 2983462 (E.D. Mo. July 22, 2011).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Amended Complaint or, In the Alternative, Motion for Summary Judgment [33] is **DENIED**, in part, and **GRANTED**, in part.  The Court **GRANTS** Defendants' Motion to Dismiss on Count III.  The Court **GRANTS** summary judgment in favor of Defendants on Counts I and II.

---

[10]Because the Court does not and cannot identify when such a delay becomes unreasonable, the Court denies Plaintiff's Motion for Summary Judgment, without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [22] is **DENIED**, as moot, without prejudice.

Dated this 11th day of March, 2013.


_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE